**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BRITTNEY OWENS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRIS HEALTH, INC.,<br><br>Defendant. | Case No. CIV-24-20-JD<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brittney Owens ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Integris Health, Inc. ("Integris" or the "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, personal knowledge, and a review of public documents.

## I. NATURE OF THE ACTION

1. Consumers trust doctors and healthcare providers with protecting highly sensitive personal, financial, and medical information. Disclosure of such information may have a devastating impact on the lives of current and former patients, becoming the target of financial crimes, having their personal lives exposed, and intimate details of their medical treatments and conditions broadcasted to nefarious actors. The harm is palpable and irreversible. This action concerns the unlawful disclosure of patient information at Integris—an Oklahoma-owned health system that operates 15 hospitals in Oklahoma and many speciality clinics. Patients have entrusted the sensitive health information to Integris in an apparent over breadth of faith.

2. On November 28, 2023 an unauthorized threat actor gained access to Integris' data systems and obtained names, dates of birth, SSNs, addresses, phone numbers, insurance information, and employer information of patients, to be sold on

the dark web for fraud and identity theft (the "Data Breach"). Patients were told they could prevent the sale of their data by making a payment before January 5, 2024, otherwise, their information will be sold to a data broker.

3. On or around December 24, 2023, through December 27, 2023, victims of the Data Breach (including Plaintiff and Class Members) began receiving emails from a cybercriminal "DataLeakege@consultas.itev.com.br" ("DataLeakege" or the "Threat Actor"), who informed Plaintiff and Class Members that Integris was breached in November 2023, impacting over 2 million patients.

4. Plaintiff received an email from DataLeakage. DataLeakege explicitly stated to Plaintiff and Class Members in the email, "[i]f you are receiving this message, your data have [sic] been compromised."

5. In this email, DataLeakege stated that highly sensitive information such as "SSN, DOB, Address, Phone, Insurance Information, and Employer Information" were compromised in the Data Breach.

6. DataLeakege also threatened Plaintiff and Class Members that their "data will sell [sic] on the darknet and be used for fraud and identity theft."

7. What is perhaps most disturbing, however, is that in the email, DataLeakege provided Plaintiff's address, telephone number, date of birth, and Social Security number as proof that it had indeed stolen Plaintiff's personally identifiable information ("PII") from Integris.

8. DataLeakege then extorted Plaintiff and the Class by giving them until before January 5, 2024, to click on a dark web link (a Tor extortion site) contained in the email and pay $50.00 for their stolen PII. If Plaintiff and the Class failed to do so, DataLeakege threatened it would sell the entire database to data brokers on January 5, 2024.

9. According to DataLeakege's email its "tor shop allows users to purchase data for fraud. Any buyer can purchase data "exclusively" for 50$. This gives the buyer exclusive rights on the data and will remove the data from the shop completely. This feature is useful for fraud activity such as identity theft, opening SIM lines, opening bank accounts, taking out loans, and making USA companies. A buyer can also purchase data without exclusive rights for 3$. In this case, the data will still be listed on the shop. You can remove your data from our shop and protect it from future fraud by purchasing exclusive rights on it (50$)."

10. The email then gave instructions on how to access the information stolen in the Data Breach on the dark web, thus Plaintiff's and the Class's PII is available for anyone to access and view.

11. According to DataLeakege, it contacted Integris after the Breach, but Integris "refused to resolve this issue."

12. This disturbing email from DataLeakege makes it clear that Plaintiff and the Class are at an imminent risk of fraud and identity theft.

13. It was not until Plaintiff and the Class were being extorted by DataLeakege that Integris made a public statement regarding the Data Breach.

14. As a result of Integris' actions and/or failure to act, Plaintiff and the Class experienced damages from: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) loss of value of their PII; (iv) the amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures; (v) Integris' retention of profits attributable to Plaintiff's and other customers' PII that Integris failed to adequately protect; (vi) economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff are now exposed to; and (vii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this data breach.

## II. <u>JURISDICTION AND VENUE</u>

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (d)(2). If a class is certified in this action, the amount in controversy will exceed $5,000,000.00, exclusive of interest and costs. There are more than 100 members in the proposed class, and at least one member of the proposed class is a citizen of a state different from Integris.

16. This Court has personal jurisdiction over Defendant because Defendant is incorporated and/or has its principal place of business in this District; conducts

substantial business in this District through its headquarters, offices, and affiliates; engaged in the conduct at issue here in this District; and/or otherwise has substantial contacts with this District and purposely availed itself to the Courts in this District.

17. Venue is also proper within this District because, pursuant to 28 U.S.C. § 1391(b)(2) because Integris is headquartered and has its principal place of business in this District, regularly and intentionally conducts business in this District, and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District. Integris' conduct caused harm to thousands of Class members residing in Oklahoma.

## III. PARTIES

### A. Named Plaintiff

18. Plaintiff Brittney Owens is an individual residing in Oklahoma City, Oklahoma who had her PII exfiltrated and compromised in the Data Breach announced by Integris on December 24, 2023, and brings this action on behalf of all those similarly situated. The following allegations are made upon information and belief derived from, among other things, investigation of counsel, public sources, and the facts and circumstances as currently known. Because only Integris (and the hackers) have knowledge of what information was compromised. Plaintiff is very concerned about identity theft and the consequences of such theft and fraud resulting from the data breach. Plaintiff places significant value in the security of the PII.

### B. Defendant

19. Defendant Integris Health, Inc. is a domestic not-for-profit corporation incorporated in the state of Oklahoma with its principal place of business located in Oklahoma City, Oklahoma.

## IV. FACTUAL BACKGROUND

### A. Integris Recognizes the Importance of Data Security

20. Integris Health is Oklahoma's largest not-for-profit health network, operating hospitals, clinics, and urgent care throughout the state.[1]

21. Integris employs more than 9,000 people and generates approximately $1.5 billion in annual revenue.

22. In the ordinary course of business, Integris receives the PII of individuals, such as Plaintiff and the Class, from its employees and patients.

23. Integris obtains, collects, uses, and derives a benefit from the PII of Plaintiff's and Class Members. Integris uses the PII it collects to provide services and/or employment, making a profit therefrom. Integris would not be able to obtain revenue if not for the acceptance and use of Plaintiff's and the Class's PII.

---

[1] Lawrence Abrams, *Integris Health patients get extortion emails after cyberattack* (Dec. 26, 2023) BLEEPINGCOMPUTER, available at: https://www.bleepingcomputer.com/news/security/integris-health-patients-get-extortion-emails-after-cyberattack/.

24. By collecting Plaintiff's and the Class's PII, Integris assumed legal and equitable duties to Plaintiff and the Class to protect and safeguard their PII from unauthorized access and intrusion.

25. Integris recognizes this duty to protect and safeguard Plaintiff's and the Class's PII and makes the following claim on its website regarding its protection of sensitive data: "[t]he confidentiality, privacy, and security of information within its care are among INTEGRIS Health's highest priorities."[2]

26. However, Integris failed to protect Plaintiff's and the Class's PII.

27. As a result, Plaintiff's and Class Members' PII was accessed and stolen from Integris's inadequately secured computer network in a massive preventable Data Breach, as corroborated by the threat actor themselves—DataLeakege.

## B. Integris's Massive and Preventable Data Breach.

28. In or around late December 2023, extortion emails were sent to Plaintiff and the Class by a cybercriminal group under the name of "DataLeakege," who claimed it stole the PII of over 2 million patients in a cyberattack against Integris in November 2023.

29. DataLeakege claims that during the Data Breach, it stole highly confidential information such as Social Security numbers, dates of birth, addresses,

---

[2] Privacy Notice, INTEGRIS HEALTH, available at: https://integrisok.com/landing/cyber-event

phone numbers, insurance information, and employer information was compromised and stolen. It is also apparent it stole the email addresses of Plaintiff and the Class.

30. DataLeakege explicitly informed Plaintiff and the Class in its extortion email that "[i]f you are receiving this message, your data have [sic] been compromised."

31. DataLeakege also provided a sample of the victim's stolen data as proof to confirm DataLeakege had accessed and stolen the victim's name, address, phone number, date of birth, and Social Security in the Breach.

32. Further, DataLeakege threatened and extorted victims of the Data Breach and relayed the following harrowing message in broken English:

33. We have contacted Integris Health, but they refuse to resolve this issue. We give you the opportunity to remove your personal data from our databases before we sell the entire database to data brokers on Jan 5, 2024. Our tor shop allows users to purchase data for fraud. Any buyer can purchase data "exclusively" for 50$. This gives the buyer exclusive rights on the data and will remove the data from the shop completely. This feature is useful for fraud activity such as identity theft, opening SIM lines, opening bank accounts, taking out loans, and making USA companies. A buyer can also purchase data without exclusive rights for 3$. In this case, the data will still be listed on the shop. You can remove your data from our shop and protect it from future fraud by purchasing exclusive rights on it (50$).

34. The emails include a link to a dark web website (a Tor extortion site) that currently lists the stolen data for approximately 4,674,000 people, including their names, Social Security Numbers, dates of birth, and information about hospital visits.

35. The website contains data added between October 19th and December 24th, 2023, allowing visitors to pay $50 to delete the data record or $3 to view it. Signaling that this was a financially motivated Breach that potentially spanned months.

36. As threat actors can use the exposed data to conduct identity theft, some patients may be tempted to pay to delete the data. However, as previous extortion demands have shown, paying a ransom does not always lead to the actual deletion of data.

37. On December 24, 2023, Integris publicly announced it experienced a data breach on its website.

38. According to Integris, on an undisclosed date, Integris discovered unauthorized activity on certain systems.

39. After becoming aware of the suspicious activity, Integris initiated an investigation into the nature and scope of the activity.

40. Integris claims that the investigation determined that certain files may have been accessed by an unauthorized party on November 28, 2023.

41. However, on December 24, 2023, Integris learned that patients began receiving communications from a group claiming responsibility for the unauthorized access.

42. Integris Health uploaded a notice to its website on December 24, 2023, finally informing the public of the Data Breach.

43. Integris encouraged anyone receiving communications from the threat actor not to respond or contact the sender, or follow any of the instructions, including accessing any links. But Integris offered no assurance it would retrieve the stolen information.

44. Integris confirmed that the types of PII compromised in the Data Breach varied by individual, but included highly sensitive information such as: names, dates of birth, contact information, demographic information, and/or Social Security numbers.

45. Integris has yet to issue Notice of Data Breach letters to Plaintiff and the Class, has yet to provide any identity theft protection services for Plaintiff and the Class, and has not provided Plaintiff and the Class with any assurance that it retrieved their stolen PII.

46. As evidenced by DataLeakege's email, Plaintiff's and the Class's PII is being exploited on the dark web as a result of Integris's failure to adequately protect Plaintiff's and the Class's PII.

47. Due to Defendant's negligence, cybercriminals have stolen and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of millions of individuals.

48. All in all, Integris failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' PII from unauthorized access and exploitation.

49. Defendant's actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

50. Integris makes no assurances to Plaintiff and the Class that it attempted to regain Plaintiff's and the Class's data from the threat actor or paid the ransom demand.

51. As such, Plaintiff and the Class are at an imminent and impending risk of identity theft and fraudAt all relevant times, Integris knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individual patients as a result of a breach.

**C. <u>Consequences of the Data Breach for Patients</u>**

52. Plaintiff and the Class have suffered actual harm and will continue to be harmed as a result of Integris' conduct. Integris failed to institute adequate

security measures and neglected system vulnerabilities that led to a data breach. This breach may allow hackers to access the PII for Plaintiff and the Class. This PII may be publicly leaked online, which may allow for digital and potential physical attacks against Plaintiff and the Class. Now that the PII has been hacked, it is available for other parties to sell or trade and will continue to be at risk for the indefinite future.

53. Integris' failure to keep Plaintiff's and Class Members' PII secure has severe ramifications. Given the sensitive nature of the PII stolen in the Data Breach – names, addresses, zip codes, phone numbers, email addresses, dates of birth, and Social Security numbers – hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff has suffered injury and faces an imminent and substantial risk of further injury, including identity theft and related cybercrimes due to the Data Breach.

54. Plaintiff's stolen PII may now be circulating on the dark web and it is highly valuable. Malicious actors use PII to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create synthetic identities.

55. Further, malicious actors often wait months or years to use the PII obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of Plaintiff's and Class Members' data may have been compromised in other data breaches, the fact that the Data Breach centralizes the PII and identifies the victims as Integris' current, former, or prospective customers materially increases the risk to Plaintiff and the Class.

56. The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[3] Moreover, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. Plaintiff will therefore need to spend time and money to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed

---

[3] U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (June 2007), available at: https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last accessed: January 5, 2024).

in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Integris' Data Breach. In other words, Plaintiff have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Breach.

57. Given Integris' failure to protect Plaintiff's and the Class Members' PII despite multiple data breaches in the past as well as subsequent data breaches, Plaintiff have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII remains in Integris' possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public as well as a large class of persons.

58. In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) loss of value of their PII; (iv) the lost value of access to Plaintiff's and Class Members' PII permitted by Integris; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Integris' Data Breach; (vi) Integris' retention of profits attributable to Plaintiff's and Class

Members' PII that Integris failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to Integris for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII, which was not the case; and (x) nominal damages.

## V. CLASS ACTION ALLEGATIONS

59. In accordance with Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a Nationwide Class and a Oklahoma Sub-Class, defined as follows:

**Nationwide Class**

> All persons in the United States whose PII was maintained on the Integris systems that were compromised as a result of the breach announced by Integris on or around December 24, 2023.

**Oklahoma Sub-Class**

> Oklahoma Sub-Class: All persons in the State of Oklahoma whose PII was maintained on Integris systems that were compromised as a result of the breach announced by Integris on or around December 24, 2023.

60. The Classes are each so numerous that joinder of all members is impracticable. On information and belief, the Classes each have more than 1,000

members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

61. There are numerous questions of law and fact common to Plaintiff and Class Members. These common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant owed Plaintiff and other Class Members a duty to implement and maintain reasonable security procedures and practices to protect their PII, and whether it breached that duty;

b. Whether Defendant continues to breach duties to Plaintiff and other Class Members;

c. Whether Defendant's data security systems before the data breach met industry and other standards;

d. Whether Defendant failed to adequately respond to the data breach, including failing to investigate it diligently and notify affected individuals in the most expedient way possible and without unreasonable delay;

e. Whether Plaintiff and other Class Members' PII was compromised in the data breach; and

f. Whether Plaintiff and other Class Members were damaged and will continue to be damaged as a result of Defendant's conduct.

62. Plaintiff's claims are typical of the Classes' claims. Plaintiff suffered the same injury as Class Members—*i.e.*, Plaintiff's PII was compromised in the data breach.

63. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including data breach class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor her counsel has interests that conflict with those of the proposed Classes.

64. Defendant has engaged in a common course of conduct toward Plaintiff and other Class Members. The common issues arising from this conduct that affect Plaintiff and other Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

65. A class action is the superior method for the fair and efficient adjudication of this controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized

litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendant's records and the records available publicly will easily identify the Class Members. The same common documents and testimony will be used to prove Plaintiff's claims.

66. A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## VI. CLAIMS ON BEHALF OF THE NATIONWIDE CLASS

### COUNT 1

### NEGLIGENCE

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Statewide Subclass**

67. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–66 as if fully set forth herein.

68. Integris collected sensitive PII from Plaintiff and Class Members when using Integris products and services.

69. Integris owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and

protecting their PII in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Integris' security systems to ensure that Plaintiff's and Class Members' PII in Integris' possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry and other standards.

70. Integris' duty to use reasonable care arose from several sources, including but not limited to those described herein.

71. Integris had common law duties to prevent foreseeable harm to Plaintiff and the Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. Not only was it foreseeable that Plaintiff and Class Members would be harmed by Integris' failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Integris knew that it was more likely than not Plaintiff and other Class Members would be harmed if it allowed such a breach.

72. Integris' duty to use reasonable security measures also arose as a result of the special relationship that existed between Integris, on the one hand, and Plaintiff and Class Members, on the other. The special relationship arose because Plaintiff and Class Members entrusted Integris with their PII. Integris alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

73. Integris' duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII by companies such as Integris. Various FTC publications and data security breach orders further form the basis of Integris' duty. In addition, individual states have enacted statutes based upon the FTC Act that also create such a duty.

74. Integris' duty also arose from Integris' unique position as a large healthcare services provider in the United States and Oklahoma. As a healthcare services provider, Integris holds itself out as a protector of consumer data, and thereby assumes a duty to reasonably protect the data that was provided to it by Plaintiff and Class Members.

75. Integris admits that it has a responsibility to protect consumer data, that it is entrusted with this data, and that it did not live up to its responsibility to protect the PII at issue here.

76. Integris knew or should have known that its computing systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII.

77. Integris also had a duty to safeguard the PII of Plaintiff and Class Members and to promptly notify them of a breach because of state laws and statutes that require Integris to reasonably safeguard sensitive PII, as detailed herein.

78. Integris also had a duty to timely and adequately notify affected persons. Timely, adequate notification was required, appropriate and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by Integris' misconduct.

79. Integris breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. Integris breached these duties by, among

other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the PII of Plaintiff and Class Members; (b) detect the Data Breach while it was ongoing; (c) maintain security systems consistent with industry and other standards during the period of the Data Breach; (d) comply with regulations protecting the PII at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiff's and the Class Members' PII in Integris' possession had been or was reasonably believed to have been stolen or compromised.

80. But for Integris' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised.

81. Integris' failure to take proper security measures to protect the sensitive PII of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional act, namely the unauthorized access of Plaintiff's and Class Members' PII.

82. Plaintiff and Class Members were foreseeable victims of Integris' inadequate data security practices, and it was also foreseeable that Integris' failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members as described in this Complaint.

83. As a direct and proximate result of Integris' negligence, Plaintiff and Class Members have been injured, will continue to be injured, and are entitled to

damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost value of access to their PII permitted by Integris; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Integris' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages and other economic and non-economic harm.

## COUNT 2

## NEGLIGENCE *PER SE*

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Statewide Subclass**

84. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–66 as if fully set forth herein.

85. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as Integris of failing to use reasonable measures to protect PII.

86. The FTC publications and orders also form the basis of Integris' duty.

87. Integris violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards. Integris' conduct was particularly unreasonable given the nature and amount of PII it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a company as large as Integris, including, specifically the damages that would result to Plaintiff and Class Members.

88. In addition, under state data security statutes, Integris had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII.

89. Integris' violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

90. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

91. The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

92. Integris breached its duties to Plaintiff and Class Members under the FTC Act and state data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

93. Plaintiff and Class Members were foreseeable victims of Integris' violations of the FTC Act and state data security statutes. Integris knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' PII would cause damage to Plaintiff and Class Members.

94. But for Integris' violation of the applicable laws and regulations, Plaintiff's and Class Members' PII would not have been accessed by unauthorized parties.

95. As a direct and proximate result of Integris' negligence *per se*, Plaintiff and Members have been injured, will continue to be injured, and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost value of access to their PII permitted by Integris; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Integris' Data Breach; lost benefit of their bargains and overcharges for services or

products; nominal and general damages; and other economic and non-economic harm.

## COUNT 3

## BREACH OF CONFIDENCE

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Statewide Subclass**

96. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–66 as if fully set forth herein.

97. Plaintiff and Class Members maintained a confidential relationship with Integris whereby Integris undertook a duty not to disclose to unauthorized parties the PII provided by Plaintiff and Class Members to Integris to unauthorized third parties. Such PII was confidential and novel, highly personal and sensitive, and not generally known.

98. Integris knew Plaintiff's and Class Members' PII was being disclosed in confidence and understood the confidence was to be maintained, including by expressly and implicitly agreeing to protect the confidentiality and security of the PII they collected, stored, and maintained.

99. As a result of the Data Breach, there was an unauthorized disclosure of Plaintiff's and Class Members' PII in violation of this understanding. The unauthorized disclosure occurred because Integris failed to implement and maintain

reasonable safeguards to protect the PII in its possession and failed to comply with industry-standard data security practices.

100. Plaintiff and Class Members were harmed by way of an unconsented disclosure of their confidential information to an unauthorized third party.

101. But for Integris' disclosure of Plaintiff's and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Integris' Data Breach was the direct and legal cause of the unauthorized disclosure of Plaintiff's and Class Members' PII to third parties, as well as the resulting damages.

102. The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Integris' unauthorized disclosure of Plaintiff's and Class Members' PII. Integris knew its computer systems and technologies for accepting, securing, and storing Plaintiff's and Class Members' PII had serious security vulnerabilities because Integris failed to observe basic information security practices or correct known or readily discoverable security vulnerabilities.

103. As a direct and proximate result of Integris' breach of confidence, Plaintiff and Members have been injured, will continue to be injured, and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft

crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost value of access to their PII permitted by Integris; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Integris' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

## COUNT 4

## INVASION OF PRIVACY – INTRUSION UPON SECLUSION

### On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Statewide Subclass

104. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–66 as if fully set forth herein.

105. Plaintiff shared PII with Integris that Plaintiff wanted to remain private and non-public.

106. Plaintiff reasonably expected that the PII they shared with Integris would be protected and secured against access by unauthorized parties and would not be disclosed to or obtained by unauthorized parties, or disclosed or obtained for any improper purpose.

107. Integris intentionally intruded into Plaintiff's and Class Members' seclusion in an unreasonable and highly offensive manner by disclosing without permission their PII, which involved their private concerns, to a third party who then sold their PII to other third-parties on the dark web.

108. By failing to keep Plaintiff's and Class Members' PII secure, and disclosing PII to unauthorized parties for unauthorized use, Integris unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, *inter alia*:

a. intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

b. invading their privacy by improperly using their PII properly obtained for specific purpose for another purpose, or disclosing it to unauthorized persons;

c. failing to adequately secure their PII from disclosure to unauthorized persons; and

d. enabling the disclosure of their PII without consent.

109. The PII that was publicized during the Data Breach was highly sensitive, private, and confidential, as it included private financial and other PII.

110. Integris' intrusions into Plaintiff's and Class Members' seclusion were substantial and would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

111. As a direct and proximate result of Integris' invasions of privacy, Plaintiff and Class Members have been injured, will continue to be injured, and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost value of access to their PII permitted by Integris; the amount of the actuarial present value of ongoing high-quality identity defense and

credit monitoring services made necessary as mitigation measures because of Integris' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

## COUNT 5

## UNJUST ENRICHMENT

### On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Statewide Subclass

112. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–66 as if fully set forth herein.

113. In the alternative to the claims set out above, Integris has been unjustly enriched as a result of the conduct described herein.

114. Plaintiff and Class Members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by Integris and that was ultimately stolen in the Integris Data Breach.

115. Integris was benefitted by the conferral upon it of the PII pertaining to Plaintiff and Class Members and by its ability to retain, use, sell, and profit from that information. Integris understood that it was in fact so benefitted.

116. Integris also understood and appreciated that the PII pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Integris maintaining the privacy and confidentiality of that PII.

117. But for Integris' willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted with Integris.

118. Because of its use of Plaintiff's and Class Members' PII, Integris sold more services and products than it otherwise would have. Integris was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

119. Integris also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' PII.

120. Integris also benefitted through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class Members' PII.

121. It is inequitable for Integris to retain these benefits.

122. As a result of Integris' wrongful conduct as alleged in this Complaint (including among things its failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the unauthorized disclosure of that PII), Integris has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

123. Integris' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

124. It is inequitable, unfair, and unjust for Integris to retain these wrongfully obtained benefits. Integris' retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

125. The benefit conferred upon, received, and enjoyed by Integris was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for Integris to retain the benefit.

126. Integris' defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their PII and has caused the Plaintiff and Class Members other damages as described herein.

127. Plaintiff has no adequate remedy at law.

128. Integris is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Integris as a result of its wrongful conduct, including specifically: the value to Integris of the PII that was stolen in the Data Breach; the profits Integris received and is receiving from the use

of that information; the amounts that Integris overcharged Plaintiff and Class Members for use of Integris' products and services; and the amounts that Integris should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' PII.

## COUNT 6

## DECLARATORY JUDGMENT

### On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the Statewide Subclass

129. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–66 as if fully set forth herein.

130. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. The Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

131. An actual controversy has arisen in the wake of the Integris Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Integris is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff continues to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises

of their PII will occur in the future given the publicity around the Data Breach and the nature and quantity of the PII stored by Integris.

132. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Integris continues to owe a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes; and

b. Integris continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

133. The Court also should issue corresponding prospective injunctive relief requiring Integris to employ adequate security protocols consistent with law and industry and other standards to protect consumers' PII.

134. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lacks an adequate legal remedy, in the event of another data breach at Integris. The risk of another such breach is real, immediate, and substantial. If another breach at Integris occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries may not be readily quantified and she will be forced to bring multiple lawsuits to rectify the same conduct.

135. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Integris if an injunction is issued. Among other things, if another massive

data breach occurs at Integris, Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Integris of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Integris has a pre-existing legal obligation to employ such measures.

136. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Integris, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose confidential information would be further compromised.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff and Class Members demand judgment as follows:

A. Certification of the action as a Class Action under Federal Rule of Civil Procedure 23, and appointment of Plaintiff as a Class Representative and her counsel of record as Class Counsel;

B. That acts alleged above be adjudged and decreed to constitute negligence and violations of the laws of Oklahoma and any other applicable jurisdictions;

C. A judgment against Defendant for the damages sustained by Plaintiff and the Classes above, and for any additional damages, penalties, and other monetary relief provided by applicable law;

D. An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes, including, but not limited to:

1. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors/penetration testers;
2. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;
3. Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;
4. Ordering that Defendant segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, unauthorized third parties cannot gain access to other portions of Defendant's systems;
5. Ordering that Defendant purge, delete, and destroy in a reasonably secure manner consumer data not necessary for their provisions of services;

6. Ordering that Defendant conduct regular database scanning and security checks; and

7. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

E. Awarding Plaintiff and Class Members prejudgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after service of this Complaint;

F. Disgorging Defendant of any amounts by which it was unjustly enriched;

G. Ordering Defendant to pay the costs of this suit, including reasonable attorney fees; and

H. Such other and further relief as the Court deems just and proper.

## VIII. <u>JURY TRIAL DEMANDED</u>

Plaintiff, individually and on behalf of all those similarly situated, requests a jury trial, under Federal Rule of Civil Procedure 38, on all claims so triable.

Dated: January 8, 2024

Respectfully submitted,

*/s/ Edward L. White*
Edward L. White (OK Bar No. 16549)
Travis D. Mendoza (OK Bar No. 35185)
EDWARD L. WHITE, PC
829 E. 33rd St.
Edmond, Oklahoma 73013
Tel.: (405) 810-8188
ed@edwhitelaw.com
travis@edwhitelaw.com

James E. Cecchi*
Kevin G. Cooper*
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

***Attorneys for Plaintiff and the Proposed Class***

** Pro hac vice applications forthcoming*